## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| CROPLEY HOLDINGS LTD., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:10-cv-3445 |
| | ) | Hon. Ronald A. Guzman |
| - against - | ) | |
| | ) | |
| | ) | |
| ELECTROLUX HOME CARE PRODUCTS, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM IN SUPPORT OF
## DEFENDANT'S MOTION FOR TRANSFER OF VENUE

Defendant Electrolux Home Care Products, Inc. ("Electrolux") respectfully moves this Court, pursuant to 28 U.S.C. §§ 1404(a) and 1406(a), for an Order transferring this action to the Peoria Division of United States District Court for the Central District of Illinois. *Cf. Anchor Wall Sys., Inc. v. R & D Concrete Prods., Inc.*, 55 F. Supp. 2d 871 (N.D. Ill. 1999) (Castillo, J.) (transferring venue of patent case from N.D. Ill. to C.D. Ill.).

## FACTS

This in an action for alleged patent infringement. The plaintiff, Cropley Holdings Ltd. ("Cropley"), is a Bahamian corporation having its principal place of business in Nassau, Bahamas. *See* Complaint ¶ 1. Cropley sues for alleged infringement of a patent (the "Conrad Patent") that issued in 2004 to a Canadian corporation, G.D.B. Corporation of Hampton, Ontario, Canada. *See* Complaint ¶ 7 & Exhibit A. The three alleged "inventors" named in the Conrad Patent ("Conrad et al.") are each also identified as being from Hampton, Ontario, Canada. *Id.*

Cropley alleges that certain Electrolux EUREKA-brand vacuum cleaner models (the "Accused EUREKA Machines") embody an alleged "invention" that Conrad et al. allegedly

- 1 -

made at some unspecified time in the late 1990's (the "Alleged Conrad Invention"), with the purported result that Electrolux has allegedly infringed the Conrad Patent "by using, making, importing, offering for sale, and selling" the Accused EUREKA Machines. Complaint ¶ 8. Cropley further alleges "Electrolux is and was aware of the '873 Patent, and its infringement of the '873 Patent has been and continues to be willful." *Id.* ¶ 11.

Cropley does not allege that it has any established place of business in the Northern District of Illinois. Cropley has willfully failed to serve initial disclosures that were due August 20, 2010, under Federal Rule of Civil Procedure 26(a) and Local Patent Rule 2.1. *See* Declaration of James W. Dabney, sworn to September 7, 2010 (hereinafter, "Dabney Decl.") ¶¶ 2-12 & Exs. 1-4. Cropley to date has not identified any individual in this district that Cropley may use to support its purported claims in this action.

Electrolux is a corporation organized and existing under the laws of the State of Delaware, having its principal place of business in Bloomington, Illinois. Complaint ¶ 2; Answer and Counterclaims ¶ 2. The Accused EUREKA Machines were developed in Bloomington, Illinois through the combined efforts of Electrolux marketing, engineering, industrial design, sales, and testing staff. Declaration of Arnold L. Sepke, sworn to August 23, 2010 (hereinafter, "Sepke Decl.") ¶¶ 10-13 & Ex. 1. *See* Declaration of Greg Luebbering, sworn to August 20, 2010 (hereinafter, "Luebbering Decl.") ¶¶ 3-5 & Exs. 1-3; Declaration of Greg Miller, sworn to August 23, 2010 (hereinafter, "Miller Decl.") ¶¶ 3-4 & Exs. 2-6; Declaration of Peter Steel, sworn to August 21, 2010 (hereinafter, "Steel Decl.") ¶¶ 2-6 & Exs. 1-2).

Arnold Sepke. Arnold Sepke of Hudson, Illinois (in the Peoria Division of the Central District) oversaw the development of the Accused EUREKA Machines. Sepke Decl. ¶ 10. Mr. Sepke has knowledge of prior art to the Conrad Patent; machine-building and problem-

solving skills that were held by persons skilled in the art at relevant times; the extent to which there is any difference between the prior art to the Conrad Patent and claim descriptions that are found in that patent; and the degree of skill that may have been needed to make at least some subject matter that is described by claim words of the Conrad Patent. *Id.* ¶¶ 14-15. *Cf. KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 406 (2007) ("Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved.") (quoting *Graham v. John Deere Co.*, 383 U.S. 1, 17 (1966)); *KSR*, 550 U.S. at 427 ("mounting a modular sensor on a fixed pivot point of the Asano pedal was a design step well within the grasp of a person of ordinary skill in the relevant art.").

Mr. Sepke also has knowledge of whether the Accused EUREKA Machines embody any alleged "invention" that is both disclosed in the specification of the Conrad Patent and pointed out by claim words appearing in that patent. Sepke Decl. ¶ 15. Mr. Sepke can identify and explain the operation and features of the Accused EUREKA Machines that may contribute to consumer demand for those machines. *Id.* Mr. Sepke is personally familiar with the complete line of EUREKA vacuum cleaner models and with design alternatives to the cyclonic separator structures that are included in the Accused EUREKA machines. *Id.* ¶¶ 16-17 & Exs. 2-3. *Cf. Riles v. Shell Exploration & Prod. Co.* 298 F.3d 1302, 1312 (Fed. Cir. 2002) ("The economic relationship between the patented method and non-infringing alternative methods, of necessity, would limit the hypothetical negotiation"); *Grain Processing Corp. v. American Maize-Prods. Co.*, 185 F.3d 1341, 1351 (Fed. Cir. 1999) (same in context of alleged lost profits damages).

<u>Greg Miller</u>. Greg Miller of Bloomington, Illinois (in the Peoria Division of the Central District) was Electrolux's General Manager of Sales of all EUREKA products. Miller Decl. ¶ 3

& Ex. 1. Mr. Miller has more than 30 years experience in floor care product sales. *Id.* ¶ 2. Mr. Miller personally signed off on Electrolux's decision to request funding for the manufacture and launch of the Accused EUREKA Machines in 2004, *id.* ¶ 3 & Ex. 1, based in part on retail buyer reaction to prototypes of the product, based in part on consumer market research that Electrolux had conducted, based in part on Mr. Miller's own examination and assessment of the product, and based in part on Mr. Miller's knowledge and 30-plus years experience in wholesale sales of vacuum cleaner products in the United States. *Id.* ¶ 3.

Mr. Miller is personally familiar with "sell sheets" that Electrolux provides to existing or prospective retail store buyers in seeking wholesale orders for the Accused EUREKA Machines. *Id.* ¶ 4 & Exs. 2-6. The "sell sheets" describe features and benefits that are believed to render the Accused EUREKA Machines appealing to consumers. *Id.* Mr. Miller has knowledge of whether particular features of the Accused EUREKA Machines (for example, the position of the machines' dust cup air outlet) were ever identified as a basis for selling those machines. *Cf. Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1336 (Fed. Cir. 2009) ("For the entire market value rule to apply, the patentee must prove that the patent-related feature is the basis for customer demand.") (internal quotations omitted).

Greg Luebbering. Greg Luebbering of Heyworth, Illinois (within the Peoria Division of the Central District) was centrally involved in the design of the Accused EUREKA Machines. Luebbering Decl. ¶¶ 2-3 & Ex. 1. Early on in the development of those machines, Electrolux personnel identified to Mr. Luebbering functional features that they believed the product should have in order to achieve commercial success in the marketplace. *Id.* ¶ 3. Mr. Luebbering personally prepared sketches and, subsequently, formal drawings of vacuum cleaners whose design was considered ergonomic, aesthetically pleasing, and responsive to functional requirements (for

example, an on-off brush roll; bagless; powerful; lightweight; compact) while being manufactur-able at an acceptable price. *Id.*

Mr. Luebbering is named as a co-inventor on U.S. Design Patent Nos. D524,498 and D524,400. *Id.* ¶ 5 & Exs. 2-3. The '498 patent discloses an improved vacuum cleaner handle assembly; the '400 patent discloses an improved vacuum cleaner base assembly. The Accused EUREKA Machines embody design features that are described in the '498 patent and the '400 patent. Both patents also name Arnold Sepke and Vince Bobrosky as the co-inventors. The lat-ter two individuals also work and reside in the vicinity of Bloomington, Illinois. *Id.* ¶ 5.

Peter Steel. Peter Steel of Bloomington, Illinois (within the Peoria Division of the Cen-tral District) was Electrolux's Marketing Director of the EUREKA vacuum cleaner business. Steel Decl. ¶ 2. Mr. Steel is knowledgeable of market research that initially led Electrolux to de-velop a lightweight, compact, full-powered (12 amp motor), bagless upright vacuum cleaner that would be positioned between small "stick" vacuum cleaners and full-sized upright machines and equipped with a unique circular handle. *Id.* ¶ 3. During the development of the Accused EU-REKA Machines Mr. Steel provided input and feedback on design concepts and prototypes and participated in project review meetings, as is reflected in contemporaneous records and meeting minutes. *Id.* & Ex. 1.

Mr. Steel is also familiar with market research that informed Electrolux's decisions with regard to the wholesale and suggested retail pricing of the OPTIMA product. *Id.* ¶ 4. Mr. Steel reviewed and personally participated in the development of media and point-of-sale display ad-vertising for the Accused EUREKA Machines. *Id.* Mr. Steel is familiar with features and bene-fits that were believed to drive consumer demand for the Accused EUREKA Machines and mar-

ketplace competition that those machines faced at the time of their introduction and subsequent-ly. *Id.*

Jacqueline Cooper. Jacqueline Cooper of Bloomington, Illinois (within the Peoria Divi-sion of the Central District) is Electrolux's Senior Director of Marketing and Communications. Declaration of Jacqueline Cooper, sworn to August 20, 2010 ("Cooper Decl.") ¶ 2. Ms. Cooper has responsibility for television and print media advertising, point-of-sale advertising, and public relations for the EUREKA and ELECTROLUX floor care product lines. She also has custody of records of consumer print, trade print, and television media advertising that has been aired or published for the Accused EUREKA Machines from time to time. *Id.* ¶¶ 3-5 & Exs. 1-3. The advertising of the Accused EUREKA Machines identifies features and benefits of the Accused EUERKA Machines.

Darin Rhoda. Darin Rhoda of Bloomington, Illinois (within the Peoria Division of the Central District) was the lead engineer on the project (code named "Astoria') that yielded the Accused EUREKA machines. Sepke Decl. ¶ 12. Mr. Rhoda authored numerous memoranda recording meetings and discussions of issues that arose during the development of the Accused EUREKA Machines, including consumer design issues (e.g., dust cup lid design, handle design, stair cleaning accessory design, on-off switch position), material costs, tooling estimates, market-ing plans, production volumes, CAD models, motor life testing, R&D costs, and launch plans. *See* Sepke Decl. ¶¶ 11-12 & Ex. 1. The meetings recorded by Mr. Rhoda occurred in Blooming-ton, Illinois. Sepke Decl. ¶ 11.

Other Witnesses. Electrolux's contemporaneous records of the development of the Ac-cused EUREKA Machines identify numerous other individuals who participated in design, engi-neering, manufacturing, marketing, accounting, and selling activities related to those machines.

*See* Sepke Decl. ¶ 11 & Ex. 1. Many of these individuals continue to reside in the vicinity of Bloomington, Illinois. *Id.* ¶ 13. Cropley's allegation of purportedly "willful" infringement (Complaint ¶ 11) calls into question the work and reputation of individuals who work and reside in the Peoria Division of the Central District. *Cf. In re Hoffmann-La Roche Inc*, 587 F.3d 1333, 1336 (Fed. Cir. 2009) (transfer of venue ordered where patent claim "call[ed] into question the work and reputation of several individuals residing in or near" the transferee district").

Electrolux has no place of business in the Northern District of Illinois. *See* Sepke Decl. ¶ 18. Electrolux's original, contemporaneous records related to the development of the Accused EUREKA Machines are located in Bloomington, Illinois. *Id.* ¶ 10. In 2009, less than four tenths of one per cent (0.4%) of Electrolux's sales of the Accused EUREKA Machines were made in the counties that comprise the Eastern Division of the Northern District of Illinois. Miller Decl. ¶ 5 & Ex. 7.

A number of individuals who played important roles in the development of the Accused EUREKA Machines, including Peter Steel and Darin Rhoda, no longer work for Electrolux and reside more than 100 miles from downtown Chicago. Sepke Decl. ¶ 12; Steel Decl. ¶ 1. A trial in Peoria would be much less costly and disruptive for witnesses having knowledge of the development of the Accused EUREKA Machines than would a trial in Chicago. Sepke Decl. ¶ 18; Miller Decl. ¶ 6; Steel Decl. ¶ 7; Luebbering Decl. ¶ 6; Cooper Decl. ¶ 6.

## ARGUMENT

## I. THE COURT SHOULD TRANSFER THIS ACTION TO THE CENTRAL DISTRICT, PEORIA DIVISION, UNDER 28 U.S.C. § 1404(a).

28 U.S.C. § 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

As a threshold matter, the present action clearly "might have been brought" in the Central District of Illinois. It is undisputed that Electrolux maintains a "regular and established place of business" (28 U.S.C. § 1400(b)) in the Central District of Illinois and, from there, directs and causes the sales activity that Cropley challenges as patent infringement in this case.

With regard to the convenience of parties and witnesses, the present action has many parallels with *Anchor Wall Sys., Inc. v. R & D Concrete Prods., Inc.*, 55 F. Supp. 2d 871, 873 (N.D. Ill. 1999), in which Judge Castillo ordered a transfer of venue to the Central District:

-- In *Anchor,* as here, the plaintiff patentee was a non-resident corporation that had no offices or employees in the Northern District. *Anchor*, 55 F. Supp. 2d at 874.

-- In *Anchor,* as here, the defendant accused of infringement was a corporation that maintained its principal place of business in the Central District of Illinois. *Id.* at 872.

-- In *Anchor*, as here, "all of the central facts surrounding this patent infringement dispute relate to activities which took place in the Central District, not the Northern District." *Id.* at 874.

-- In *Anchor*, as here, the accused products were designed at the defendant's principal place of business in the Central District of Illinois. *Id.*

-- In *Anchor*, as here, the defendant's personnel involved in the development and sale of the accused products all resided and worked in the Central District of Illinois. *Id.*

-- In *Anchor*, as here, "the sources of proof are located primarily in the Central District" including "drawings, financial records, and sales records related to the alleged infringement." *Id.*

-- In *Anchor*, as here, a trial in the Northern District would have forced the defendant's knowledgeable personnel to incur costs for "transportation, hotel accommodations, and restaurant meals," which a transfer could eliminate "without significantly increasing the burden on the patentee." *Id.* at 875.

-- In *Anchor*, as here, the plaintiff patentee "itself does not reside here and will be litigating the case in a remote location regardless of whether venue is transferred or retained." *Id.*

-- In *Anchor*, as here, the plaintiff's employee witnesses were located out-of-state and for them, "[t]raveling to the Central District does not increase the burden on these witnesses, as neither their travel costs nor travel time are increased substantially." *Id.* at 874

-- In *Anchor*, as here, the accused products were sold in several states, but "only a small percentage of the alleged infringing items were sold here" in the Northern District. *Id.*

Based on the facts and circumstances described above, Judge Castillo concluded that the convenience of the parties and witnesses in the *Anchor* case favored transfer to the Central District of Illinois, and that "the interest of justice would be better served by transferring the action to the Central District where the situs of material events occurred." *Id.* at 875. The reasoning that supported Judge Castillo's decision in *Anchor* is fully applicable to the facts here. Judge Castillo transferred the *Anchor* case to the Central District of Illinois; the Court should do the same here.

**Convenience of Parties**

In ordering the *Anchor* action transferred to the Central District of Illinois, Judge Castillo reasoned that the "convenience of the parties" factor weighed "heavily in favor of a transfer." *Anchor*, 55 F. Supp. 2d at 875. Decades of judicial experience with patent litigation have led to widespread recognition that evidence relevant to claims for alleged patent infringement is nearly always concentrated at the place where alleged infringer designed and developed the accused products:

> In a patent infringement case practicality and convenience are best served when [it] is prosecuted where the alleged acts of infringement occurred and the defendant has a regular and established placed of business so as to facilitate the production and investigation of books, records and other data necessary to the discovery and trial techniques employed in the patent field.

*Anchor*, 55 F. Supp. 2d at 875 (quoting *Ardco, Inc. v. Page, Ricker, Felson Marketing, Inc.*, No. 92 C 2927, 1992 WL 246862 at *6 (N.D. Ill. Sept. 23, 1992) (Kocoras, J.) (quoting *Spound v. Action Indus., Inc.*, 369 F. Supp. 1066 (N.D. Ill. 1974) (Bauer, J.))). *See also In re Genentech*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) ("In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location.") (quoting *Neil Bros. Ltd. v. World Wide Lines, Inc.*, 425 F. Supp. 2d 325, 330 (E.D.N.Y. 2006)).

On the other hand, Judge Castillo held that the *Anchor* plaintiff's choice of the Northern District as a forum was entitled to "little weight." *Id.* at 874. The plaintiff in *Anchor* was not a resident of the Northern District and "only a small percentage of the alleged infringing items were sold here." *Anchor*, 55 F. Supp. 2d at 874. "Sales alone," Judge Castillo continued, "are insufficient to establish a substantial connection to the forum if the defendant's goods are sold in many states." *Id. Accord In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009) ("the sale of an accused product offered nationwide does not give rise to a substantial interest in any single venue"; transfer of venue ordered); *In re TS Tech USA Corp.*, 551 F.3d 1315, 1321 (Fed. Cir. 2008) (where vehicles containing allegedly infringing headrest assemblies were sold nationwide, "the citizens of the Eastern District of Texas have no more or less of a meaningful connection to this case than any other venue"; transfer of venue ordered).

Further, and as in this case, the plaintiff in *Anchor* had no offices in the Northern District and "will be litigating in a remote location regardless of whether venue is transferred or retained." *Anchor*, 55 F. Supp. 2d at 875. The *Anchor* plaintiff's employees would "be required to travel to Illinois from Minnesota whether the action is transferred or retained." *Id.* at 874. "Traveling to the Central District does not increase the burden on these witnesses, as neither their

travel costs nor travel time are increased substantially." *Id.* The *Anchor* plaintiff had also "not pointed to any documentary evidence to be gathered in this district in support of its claim." *Id.* at 875. Judge Castillo thus "easily conclude[d] that the overall convenience of the parties supports a transfer of this lawsuit to the Central District of Illinois." *Id.*

To the extent that the facts of this case differ from those in *Anchor*, they do so in ways that make this case an even stronger candidate for transfer than the *Anchor* case was. In *Anchor*, the plaintiff claimed that one of its licensees maintained offices in the Northern District and its licensee's employees assertedly had relevant knowledge. *Anchor*, 55 F. Supp. 2d at 874. Judge Castillo discounted this point, reasoning that the licensee's employees "will appear voluntarily at either forum." *Id.* But at least it was a point, which has no counterpart in this case. Cropley has not to date identified any person that has licensed the Cropley Patent, much less such a person that has knowledgeable employees or interests located in the Northern District.

**Convenience of Witnesses**

As in the *Anchor* case, the "convenience of the witnesses" factor here also strongly support transfer to the Central District. As described above and in the accompanying declarations, the Accused EUREKA Machines were designed and developed at Electrolux's headquarters in Bloomington, and key actors who participated in the design and development of the Accused EUREKA Machines still reside and work in the vicinity of Bloomington. Peoria is within easy commuting distance of Bloomington (approximately 35 miles), whereas a trial in Chicago would require overnight hotel stays, restaurant meals, etc. A trial in Peoria would also be much less costly for Electrolux, and less disruptive of its business operations, than would a trial in Chicago. The convenience of Electrolux witnesses would be greatly served by the requested transfer.

Importantly, certain key actors in the development of the Accused EUREKA Machines no longer work for Electrolux and reside more than 100 miles from Chicago. *See* Sepke Decl.

¶ 12; Steel Decl. ¶ 1. These witnesses have a legal right to object to being summoned to attend trial in Chicago under Federal Rule of Civil Procedure 45(c)(3)(B)(iii), but have no such right to object to attend trial in Peoria. A court's authority to subpoena knowledgeable third-party witnesses for trial "is often viewed as the most important factor in the transfer analysis." *Anchor*, 55 F. Supp. 2d at 874. *See Hoffmann-La Roche*, 587 F.3d at 1337. And here that factor decisively favors transfer to the Peoria Division of the Central District, where Electrolux's former employees are subject to the Court's "absolute" trial subpoena power under Rule 45. The case for transfer here is, in this respect, even stronger than was the case for transfer in *Anchor*, where relevant third-party witnesses were "beyond the subpoena power of either forum so their convenience is not afforded much weight." *Anchor*, 55 F. Supp. 2d at 875.

Cropley has not identified any knowledgeable witnesses who are located in the Northern District (*see* Dabney Decl. ¶ 10), and its out-of-district witnesses could attend trial in Peoria without any significantly increased burden or expense than they would incur to attend a trial in Chicago. Here again, as in *Anchor*, "the overall convenience of the witnesses will be increased by a transfer of this lawsuit to the Central District of Illinois." *Anchor*, 55 F. Supp. 2d at 875.

**Interest of Justice**

As described above, this case has no meaningful connection to the Northern District of Illinois. The alleged "invention" disclosed in the Conrad Patent was not made here; the Accused EUREKA Machines were not developed here; neither party maintains any place of business here; and no relevant witness lives or works here. Less than four tenths of one percent (0.4%) of Electrolux's sales of the Accused EUREKA Machines are made in the counties that make up Eastern Division of the Northern District, including Cook County.

In similar circumstances, Judge Castillo held in *Anchor* that: "because the plaintiff's action has no significant connection to this forum, the interest of justice would be better served by

transferring the action to the Central District where the situs of material events occurred." *Anchor*, 55 F. Supp. 2d at 875. The same is true here.

## II. THE COURT SHOULD TRANSFER THIS ACTION TO THE CENTRAL DISTRICT, PEORIA DIVISION, UNDER 28 U.S.C. § 1406(a).

"28 U.S.C. § 1400(b) is the sole and exclusive provision controlling venue in patent actions, and . . . it is not to be supplemented by the provisions of 28 U.S.C. § 1391(c)." *Fourco Glass Co. v. Transmirra Prods. Corp.*, 353 U.S. 222, 229 (1957). 28 U.S.C. § 1400(b) provides:

> Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business.

As used in 28 U.S.C. § 1400(b), the term "resides" has long been held to refer to a person's *domicile*, which in the case of a corporation "mean[s] the state of incorporation only." *Fourco*, 353 U.S. at 226 (citing *Shaw v. Quincy Mining Co.*, 145 U.S. 444 (1892)). *See Brunette Mach. Works, Ltd. v. Kockum Indus., Inc.*, 406 U.S. 706, 707 n.2 (1972) ("the residence of a corporation for purposes of [§] 1400(b) is its place of incorporation").

In *Fourco*, the question was whether the term "resides" in 28 U.S.C. § 1400(b) was subject to the definition of "residence" found in the general venue statute, 28 U.S.C. § 1391(c); and the Supreme Court's answer to this question was an emphatic "no." *See Fourco*, 353 U.S. at 228-29. Applying multiple canons of statutory construction, the Supreme Court in *Fourco* reversed a decision of the Second Circuit that had held that "proper construction 'requires . . . the insertion in' § 1400(b) 'of the definition of corporate residence from' § 1391(c)." *Fourco*, 353 U.S. at 223-24. Section 1400(b), the Supreme Court held, "is complete, independent, and alone controlling in its sphere" and "is not to be supplemented by the provisions of 28 U.S.C. § 1391(c)." *Id.* at 228-29.

Here, it is undisputed that Electrolux is a Delaware corporation. Complaint ¶ 2. Under Supreme Court precedent, Electrolux does not "reside" in this district within the meaning of 28 U.S.C. § 1400(b). *Brunette*, 406 U.S. at 707 n.2; *Fourco*, 353 U.S. at 228-29; *Joslyn Mfg. Co. v. Amerace Corp.*, 729 F. Supp. 1219, 1222-23 (N.D. Ill. 1990) (Moran, J.). *But see VE Holding Corp. v. Johnson Gas Appliance Co.* 917 F.2d 1574 (Fed. Cir. 1990) (holding that the term "resides" in 28 U.S.C. § 1400(b) is governed by the definition of "residence" found in 28 U.S.C. § 1391(c) as amended in 1988).

Cropley does not even allege, and cannot show, that Electrolux has "a regular and established place of business" in this district. 28 U.S.C. § 1400(b). Hence while the Court can and should (for the reasons set forth in Part I, *supra*) transfer this action to the Central District under 28 U.S.C. § 1404(a), Electrolux respectfully submits, in the alternative, that under a proper interpretation of 28 U.S.C. § 1400(b) and controlling Supreme Court precedent, *see Jocelyn*, 729 F. Supp. at 1222-23, venue is actually improper in this district and the Court should, in the alternative, transfer this action to the Central District in the exercise its authority under 28 U.S.C. § 1406(a).

## CONCLUSION

For the reasons set forth above, the Court should transfer this action to the Peoria Division of the Central District of Illinois.

Dated: September 10, 2010

James W. Dabney
Justin M. Ross (*of counsel*)
FRIED, FRANK, HARRIS, SHRIVER
& JACOBSON LLP

One New York Plaza
New York, New York  10004-1980
212-859-8000
212-859-4000 fax
james.dabney@friedfrank.com

Joseph E. Cwik
HUSCH BLACKWELL SANDERS LLP
120 South Riverside Plaza
Suite 2200
Chicago, IL  60606
312-526-1622
312-655-1501 fax

Attorneys for Defendant
Electrolux Home Care Products, Inc.

7830132